This case involves a clear dispute between the parties on the correct legal standard for the defense of sentencing entrapment. The government argues from an old version of the guidelines and from cases that do not apply the relevant guideline or predate this court's decision adopting the doctrine of sentencing entrapment in Stouffer. I want to, the guideline, applicable guideline is section 2D1.1 and the commentary note 12 states or and not and. One can receive sentencing entrapment relief by demonstrating either a lack of intent or a lack of capacity. Both are basis for a reduction in the quantity amount that's utilized for determining the base defense level. Judge Goldberg Counsel, I think you're right about the or. I'm concerned, though, about whether the evidence makes out the lack of capacity, which I think is the core of your argument. What it looked like it made out was just it's a and he doesn't know all these people and they don't all know him, so he wants his money up front. He doesn't want to be at risk financially. Why isn't that at least a permissible interpretation so that there's no use of discretion? The first issue is that the court never reached the capacity issue. The court never made a finding on capacity. The court resolved the matter in a one-sentence proclamation from the defendant was ready and willing to engage in the transaction. Therefore, sentencing entrapment is not applicable. That's all I said, ready and willing? Yes, sir. That is. It's on page. The court's findings is quoted on page 29 of the brief. Page 29 of whose brief? Of my brief, the opening brief. You're talking about page 26 of the excerpt? It's actually 29 of the excerpt of records as well. Twenty-nine. So the court made no findings. I believe we've argued and outlined all of the factual basis for the argument and argued in our second grounds for relief that even if the court had... Counsel, it looks like the judge at 26 isolated what he thought was the question. He says the question is more to me whether the defendant appeared ready and willing to engage in a in some remarkable way with regard to quantity. And then he listened to counsel and asked a couple of more questions. And then at 29 and 30, he made his finding that he was ready and willing. And I thought ready and willing addressed capacity as well as predisposition. I disagree. The reason the court erred was because the government was advising the trial court that the only issue was whether or not he was willing to engage in this transaction. The government didn't address the capacity issue. So you think the judge is just talking predisposition there? That's right. That's right. Not capacity. And partly it's because... Where can I get that from the excerpt? The government was arguing that willingness was the only issue in pages... There's very little in the government sentencing memorandum as the main litigation in this case dealt with safety valve. But beginning on page 21, or excuse me, 20, the government starts arguing and telling the judge that the issue is whether the defendant was a reluctant participant and whether he was willing to participate. I tried to get the court to understand that the government was asserting a standard that was similar to the defense of entrapment and avoiding the legal standard for sentencing entrapment, which doesn't, as we all know, sentencing entrapment, you can have a predisposition. The predisposition is determined based on what your historical tendency was as far as the quantity of the controlled substances that you had dealt with before. In this case, he had only, the government as much as conceded that they had no information other than from the informant that suggested that he had dealt in only quarter pound quantities. And so our position was throughout, not that he was unwilling to engage in a two pound transaction, but he was incapable of doing it until the government provided the $2,000 up front money. And in fact, he postponed his trip from California to Oregon until he could confirm by the source that the money was received. I can do it, but I can't do it on credit. I've got to have the money up front. Is that enough for sentencing entrapment? That's lack of capacity, Your Honor. He did not have the credit. It was clear from the transcripts that he had to gain the trust of the source. He hadn't done this before. But for the $2,000 that the government provided, it would not have happened. I'm thinking what sentencing entrapment for is the guy that usually deals ounces and the government sets him up with his first one kilo deal and then busts him. Well, this is similar. He usually did quarter pounds. He'd never done pounds. The confidential informant testified as to such. He never did pounds before. And so instead of asking for a kilo when the guy only did, like in Navarro, half a kilo before, it's very similar. I was under the impression that the informant said that your client indicated that he was willing to do greater amounts. Is that right? There was evidence that they had discussed the possibility of doing pounds. Well, that's very squishy. Who said what? Well, the informant said that at two different times said that my client had indicated he was willing to bring five pounds up. That's the point. The evidence is your client is the one that said he was willing to bring five pounds. That was what the informant stated to our investigator. The issue is not so much – the informant also indicated to our investigators that he knew that he had never dealt in pounds. He knew he was always puffing. He talked – he never had pounds around him either, just not dealing with it. But he was puffing and that he was just – he was just talking himself up. As a friend of mine used to say, the proof of the pudding is always in the eating. Your client is the one who brought up five pounds. That's what the deal – it turns out that's what the deal was all about. And he produced five pounds. Doesn't the Hines case out of the District of Columbia Circuit tell us that if your client produces, that's pretty much the end of it under these circumstances? No, Your Honor. The note itself in the Stouffer case set forth that if you're only predisposed to do a smaller quantity and you can demonstrate that, but for the government's involvement, you lack the intent to deliver the negotiated – it doesn't matter that you actually – You're forgetting again who said pounds. Who started it? Your client. Actually, there was a dispute as to that testimony. But we didn't care. What the record is clear is that the government informant said he knew he had never dealt in pounds before. The government concedes that at a certain page in the transcript. I'll give you all of that. So the issue is there was no predisposition. Then you get to the next two concepts, which are different. You can leap from that to no disposition when it was your client who said he wanted to do large quantities? Yes, Your Honor, because predisposition is determined based on what they tend – what the tendency is, what they If I tell you, look, I've only been dealing in baggies and I want to do a 30-ton deal, it's irrelevant that I said I want to do a 30-ton deal. You can only get me for baggies. And then if I do a 30-ton deal, you can only get me on baggies. You clearly intended to, but the second part of the test in the disjunctive is could you have done it. You can intend to do it. The second part of the test, which allows you – entitles you to relief is whether you really could have done it. So we ignore the fact that he did it? We don't ignore the fact that the government allowed him to do it by getting involved in negotiating the amount and providing the resources to do it. I'm not sure that that really works with the language here, was not reasonably capable of providing the agreed-upon quantity. I keep translating this in my mind to legal commerce as a way of measuring whether somebody has the capacity. I'm thinking suppose you're a very small dealer in some sort of legal goods, I don't know, lumber, and you can only get so many pallets of lumber from your supplier because of the kind of business you've been doing. Then some big construction project comes along, and you get the contract to supply the lumber, and you contact the supplier and work out a price to put in your bid for the contract. The supplier says, but there's one thing, this is 10 times what you've ever ordered from us. We can't do it all on credit like we've been doing. You've got to have some money up front. So part of the contract deal that is negotiated is some sort of progress payments so that the lumber yard can do it. It seems to me that that's analogous. And you wouldn't say the lumber yard doesn't have the capacity to take on the big contract. Well, I disagree, Your Honor, because, well, first off, I guess it is somewhat analogous. But first off, we're dealing with legitimate business versus illegitimate business, and there are some overlays there. But in this case, still, the issue is that he did not have credit. He could not do it, and that's clear from the transcripts. On page 75, it's – Yeah, he didn't have credit because he's always been a smaller dealer. But is that what lack of capacity means? Yes, Your Honor. I believe it is. When you're talking about a drug transaction that the government is a party to and negotiates, yes, that's what we need to look at. If he lacked the capability, the government is creating the crime by providing the resources. I lacked the capacity to buy my house 30 years ago unless I gave them a big down payment. They wouldn't give me credit for 100 percent. But I sure didn't lack the capacity to buy the house. All I had to do was give them the big down payment. Again, the down payment – I can't see where the analogy breaks down. Okay. Well, I guess maybe I'm not understanding your point because what I'm saying is you wouldn't have gotten the house if you didn't have the down payment. Same thing for him. He wouldn't have received the two pounds if he didn't have the down payment. And, in fact, there was an attempt to wire the money at first, and the supplier said it didn't arrive. And so he changed his plan, and then the C.I. said he'd wire it again. And it was only then that it was clear, if you read the transcripts, that the transaction was going to come off. For about four or five of the conversations, you're wondering whether it's going to happen. His initial response was, well, you know, call me. He sort of disbelieved. Call me when you get back. And after that, it's clear that he believes there's a lot of planning that needs to go into this because he's not done this before. And it wasn't until that $2,000 was received by the source that he was able to acquire the quantity and bring it to Oregon. Thank you. What other points would you like to tell us about? I just would point out that our second argument is somewhat dependent on the first because – Take your time. Take your time. Don't get depressed. Go ahead. We do believe that the trial court erred because in not suggesting that he had – based on Mr. Navarro-Gonzalez's AMIA status, but we acknowledge it's only relevant if we prevail on our first assignment of error. And other than that – Well, your argument is that the judge didn't know, didn't understand? Yeah, he just – I believe that the language was that he said it wasn't a basis. Well, that was the language, but the argument from both sides. You told him in your written submission, and I've got it right here, I'm sure you remember it, that he had legal discretion. And the government, on page 11, excerpt 10 of its submission, said the district court technically has legal discretion to depart downward because of the defendant's Aryan status. So are you asking us to ignore that and to interpret the judge's words just in a vacuum? Well, I guess, Your Honor, if the parties are both advising the court that it has discretion, that you might suggest that the judge knew that. I think it's at least ambiguous whether he did because he says that's not a basis. What do you think is going to happen if it goes back? Well, if it does go back, and that would be one last point I would like to make. If you do agree with me that this needs to be remanded back, we would like you to consider asking that a different judge reapply the facts in this case on the sentencing entrapment argument. Okay. Thank you. Thank you, counsel. May it please the Court. My name is Doug Fong. I represent the government. First, I want to confess that this issue of the lack of capacity prong of the sentencing entrapment argument confused me for the longest time. But I think I finally figured it out in the last week. I think the problem, Judge Reiser – Okay, time out. Were you confused when you made the argument to the district court? No, I wasn't, Judge. But you just figured it out last week? Well, I was having trouble understanding what the defense was trying to say on how lack of capacity fit into this particular argument. The issue is, was he able to do it, is what the defense said. That's correct. And you didn't understand that. No, I understood that. But the defense was arguing this conjunctive versus disjunctive, whether it's an and or an or. And I think the problem with that argument is that we are viewing this in the wrong context. Who's this we? Do you have a mouse in your pocket? Are you still confused? No, I'm not confused. But I think the defense has been viewing this argument in the wrong context. The context – I went back and looked at the sentencing guidelines when they were amended, and they actually did change the language to or. But, Judge, the context is that of a negotiation where no drugs were actually delivered. And that's the context that they apply the test to, whether or not the person was predisposed, and then, secondly, whether the person was otherwise capable or incapable of producing the drug. So you're saying the capacity issue goes away when the person actually delivers, proving that the pudding is rich. Absolutely. And the sentencing guidelines and the amendments and the notes of that discuss that as well. They say specifically in those circumstances when drugs are actually delivered, you look to the amount delivered. And they discuss capacity to produce only in terms of negotiations. So that's when you nail somebody for a conspiracy, for big talk, but there's been no action yet. Exactly. And that's when the burden of the government is to show, well, this was the negotiation, and then the burden shifts to the defendant to be able to say, well, I really didn't mean it. This was just mere puffery. In our context, the drugs were, in fact, delivered. There is no question as to this defendant's predisposition. The defense admits that, yes, he was predisposed, that he admits that, yes, it was his intent to deliver the two pounds. Judge Hogan made three critical findings in this case. Number one, that the informant was credible, and that included the informant's testimony that the defendant wanted to bring nine or ten pounds of methamphetamine to Oregon. Number two, that this defendant was ready and willing to engage in the transaction. And then number three, that this defendant did not prove sentencing entrapment. Is there a limit to what the government can do in assisting people to commit crime? Is there a limit? Yes or no, and then tell me what the limit is if there is one. The limit, Judge Ferguson, is that the government cannot induce a person to commit a crime, at least in the sentencing entrapment context. Well, the crime wouldn't have been committed unless the government gave him the money. He may have all the intentions in the world to do something, but until you do something, you're not a criminal. He became a criminal when he used the government money to buy drugs. Judge, it's our position, and we think from the facts that show, that this defendant was a criminal before we even met him. Well, charge him with that then. But why do you want people to have a tendency to do something? You give them money to encourage them to do it. Judge, it's the government. Encourage people to commit crime. Respectfully, Judge Ferguson, it's the government's duty to flush out crime, but to do that within the means allowable by law. So there's no limit then? That's not true, Judge Ferguson. Tell me what the limit is. The limit in this case, particularly in our context, we're talking about not general entrapment as far as criminal liability. We are talking specifically, Judge Ferguson, about sentencing entrapment here. We cannot induce this defendant by, say, any kind of pressure or unreasonable promises. We can't induce this defendant to commit a crime greater than what he is already willing to do. But you can give him the resources to do it. But there's no question that we can give him the opportunity to commit that crime without the inducement, and that's what the money issue is all about. That money issue is simply giving him the opportunity to commit the crime. And if you'll notice, Judge Ferguson, from the transcripts, in this case, the issue is... But you understand that in every crime there has to be two contexts. One is an intent to commit a crime, and then the other one is the act of doing it. Now, if you have an intent, you're not a criminal. But if you have the intent and you do it, then you are a criminal. Now, this guy wouldn't have done the act unless the government gave him the money to do it. The government's a conspirator, isn't it? The issue in this case is not a but-for case. Let's change the circumstance. Let's suppose I'm a fence. I sell stolen property. But I'm only going to sell that stolen property to someone that's going to bring me the money. If you come in and say, hey, I want stolen property for free, or I want the stolen property on the front and you'll pay me later, in all due respect, Judge Ferguson, that doesn't fit within my business scheme. And so I'm not going to sell you the stolen property. I might sell it to the next person that has the $2,000 or the $8,000, but I'm not going to sell it to you because you don't have the money. Help me on Naranjo. I think distinguishing it on the basis of the change between the conjunctive and disjunctive isn't really enough for me. Tell me how to distinguish Naranjo factually. And that's what I'm saying. The confusion is that this conjunctive and disjunctive. I don't know if anyone's confused. Tell me what the factual distinction of Naranjo is. Naranjo is this. wanted to buy from the government an ounce of Coke. But the government wanted to sell him five kilograms of Coke instead of the one kilogram. And where Naranjo came in is that when he actually showed up, he negotiated this deal. And the government actually put five kilograms on the table. But when Naranjo showed up for the deal, he only had the money for one kilogram. And he was saying, look, I only wanted to buy one or two kilograms in the first place. And the courts looked at that and said, look, there's an issue here whether he had the capability of actually paying for the five kilograms. OK, I understand all that. Tell me how to articulate a distinction. Just imagine that this was an opinion and that you got to write the paragraph that distinguished Naranjo. Read me the paragraph. The distinction is this. This is not a reverse sting situation. The defendant's capability to obtain the two pounds of methamphetamine is proven foremostly by the fact that he actually delivered the quantity. He was actually able to get the two pounds, not something less. Number two, this was a situation where imagine that he has already said, look, I would like to bring nine or ten pounds to Oregon in this manner. Number three, when you look at the transcripts, he expressed no reluctance at being able to obtain two pounds of methamphetamine. He didn't say, boy, I don't know how I'm going to get this. He didn't say, I don't have the resources. He said, show me the money. He might be a broker in this manner, but that's what the broker does. The broker says, you show me the money, I'll get the dope, period. And the fact that this defendant was, in fact, able to produce that methamphetamine shows that he was capable of doing that. The Naranjo circumstance only applies to negotiated amounts where money or drugs have not changed hands at that point. That's all I have unless John has any questions. Thank you, Counsel. One minute. Sure. Schoelfer and Naranjo both considered notes 12, and then Naranjo considered notes 17 as well. If anything, the reverse sting, there was sort of a question in Naranjo about whether in a reverse sting situation, you can actually deduct the quantity that he couldn't pay for from the guideline calculation. But the Naranjo court looked at note 12 and decided that note 12 covered reverse stings anyway. Both Castaneda was next, and in that case, they relied on Naranjo. And then, of course, we have Rewe, all of those we've raised. Both Schoelfer, Castaneda, and Rewe all delivered their drugs that were negotiated by the government. And the courts either applied the sentencing and treatment doctrine as we've suggested and as the notes require in those cases or remanded it so that the court can consider whether the defendants in those cases were entrapped. So the note applies regardless of whether or not the controlled substance was delivered. Thank you. Thank you, Counsel. The case just argued is order submitted. We thank you both. The third case on the calendar, United States v. McTeer, is order submitted on the briefs. We'll move then to United States v. Paul Schneider.
judges: Ferguson, Trott, Kleinfeld